1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JASMINE DAVIS,                            No. 2:23-cv-02975-DC-CKD

12            Plaintiff,

13        v.                                   ORDER GRANTING DEFENDANT'S
                                               MOTION TO DISMISS WITH LEAVE TO
14   CADENCE EDUCATION, LLC,                   AMEND

15            Defendant.                       (Doc. No. 15)

16

17

18        This matter is before the court on the motion to dismiss filed by Defendant Cadence

19   Education, LLC ("Cadence"). (Doc. No. 15.) Pursuant to Local Rule 230(g), the pending motion

20   was taken under submission to be decided on the papers. (Doc. No. 16.) For the reasons explained

21   below, the court will grant Defendant's motion to dismiss, with leave to amend.

                                     **BACKGROUND**
22
          Plaintiff Jasmine Davis filed this action in the Sacramento County Superior Court against
23
     Defendant Cadence, her former employer, and Does 1–20 on October 17, 2023. (Doc. No. 1 at
24
     17.) On December 20, 2023, Defendant removed this action to this court. (Doc. No. 1.) Plaintiff
25
     filed a first amended complaint as a matter of course pursuant to Federal Rule of Civil Procedure
26
     15. (Doc. No. 8.) Defendant filed a motion to dismiss on March 1, 2024, which the court
27
     summarily granted with leave to amend on April 15, 2024. (Doc. Nos. 9, 13.) Plaintiff
28
                                            1

1    subsequently filed the operative second amended complaint ("SAC") on May 3, 2024. (Doc. No.

2    14.) In her SAC, Plaintiff alleges the following.

3        In December 2017, Plaintiff, an African-American woman, started working at Cadence

4    Academy as a pre-school teacher. (*Id.* at ¶¶ 14, 74.) Plaintiff's older child began attending

5    Cadence Academy shortly after Plaintiff started working there. Plaintiff's younger child, a son,

6    began attending Cadence Academy in October 2018. (*Id.* at ¶ 15.)

7        In October 2019, Katie Salvino, another Cadence Academy employee and daughter of the

8    Cadence Academy director Deborah Salvino, recorded a video of herself holding Plaintiff's then

9    thirteen-month-old son and "manipulat[ing] the baby's body to dance to a rap song." (*Id.* at ¶ 16.)

10   The video showed Plaintiff's son "being jerked around and lifted to dance." (*Id.*) Another

11   Cadence Academy employee, Ashley Charity, posted the video of Plaintiff's son and Katie

12   Salvino on Facebook and sent the video to Plaintiff. (*Id.*)

13       According to Plaintiff, Katie Salvino and Ashley Charity "have cared for many children of

14   all races during their employment with Cadence," and Plaintiff is not aware of them ever

15   "forc[ing] any other infants to dance and then tak[ing] videos of them, except for [Plaintiff's son],

16   who is African-American." (*Id.* at ¶ 17.) Plaintiff believed the mistreatment of her son would not

17   have occurred to children of non-employees. (*Id.* at ¶ 18.) Plaintiff believed it was illegal for staff

18   at Cadence Academy to mistreat her son. (*Id.* at 19.) The video recording was taken during work

19   hours, and the employees responsible were never disciplined for their actions. (*Id.*)

20       Plaintiff subsequently directed her mother, Rhonda Davis, to report the Cadence Academy

21   employees' actions to the California Department of Social Services ("DSS"). (*Id.* at ¶ 20.)

22   Plaintiff was concerned about retaliation if she reported the incident herself. (*Id.*) DSS contacted

23   Defendant regarding the incident and interviewed multiple employees. (*Id.*) Defendant and its

24   employees were informed that Plaintiff's mother was the one who filed a complaint with DSS.

25   (*Id.* at ¶ 21.) Defendant was eventually cited for a "violation of personal rights of a child." (*Id.*)

26       Plaintiff noticed that after her mother reported the incident to DSS, "many of her

27   coworkers and supervisors began to treat her differently." (*Id.* at ¶ 22.) Prior to the incident and

28   reporting to DSS, Plaintiff often socialized with her coworkers at work and after work, and

2

1    "engaged in regular conversations both personal and work-related." (*Id.* at ¶ 23.) After the

2    incident, Plaintiff was no longer invited to social events with her coworkers and "felt very

3    ostracized" as a result. (*Id.*) Plaintiff's children were also allegedly neglected and treated

4    differently. (*Id.* at ¶ 24.) On multiple occasions when Plaintiff picked her children up from

5    Cadence, she found their diapers had not been changed. (*Id.*)

6        Plaintiff reported the actions of her co-workers to her supervisor, director Deborah

7    Salvino, but the "ostracization" of Plaintiff and neglect of her children continued. (*Id.* at ¶ 29.)

8    One of Plaintiff's coworkers, identified as Danielle, informed her that "everyone was mad at

9    Plaintiff for her mother's reporting of the school's actions regarding her son." (*Id.* at ¶ 26.)

10   Danielle also informed Plaintiff that Deborah Salvino "told all the employees not to speak to

11   Plaintiff because they could not trust her." (*Id.* at ¶ 27.) Plaintiff believed Danielle because when

12   Deborah Salvino was upset with other employees, she advised Plaintiff not to speak with them.

13   (*Id.* at ¶ 28.)

14       On October 17, 2019, Plaintiff discussed the harassment and retaliation she experienced

15   with Deborah Salvino. (*Id.* at ¶ 29.) Plaintiff told her the "exploitation" of her son in a racial

16   manner by Katie Salvino and subsequent lack of discipline was unacceptable. (*Id.*) Plaintiff also

17   told Deborah Salvino that this caused "a significant amount of stress and emotional pain because

18   it was obvious to Plaintiff that they did not care about the mistreatment of Plaintiff's son in a

19   classroom where he should have been safe." (*Id.*) Deborah Salvino denied that Plaintiff was

20   retaliated against or harassed and did not offer to protect Plaintiff or her children. (*Id.* at ¶ 30.)

21   Also on October 17, Deborah Salvino told employees that Plaintiff was "throwing them under the

22   bus." (*Id.* at 33.) Plaintiff believes that Katie Salvino "would not have committed her

23   discriminatory actions against [Plaintiff's son] if he were not African-American, as rap music is

24   primarily performed by African-American artists." (*Id.* at 32.)

25       On October 23, 2019, a coworker told Plaintiff that her children's teachers at Cadence

26   Academy said "they did not want to do anything regarding [Plaintiff's] children because they did

27   not want to deal with Plaintiff or get reported by her." (*Id.* at ¶ 38.) That same day, Plaintiff

28   submitted a resignation letter to Deborah Salvino, reminding her of the issues discussed in their

1    October 17, 2019 meeting and explaining why she was quitting. (*Id.* at ¶ 39.) Plaintiff later

2    forwarded that letter to Defendant's corporate office. (*Id.*)

3        On October 16, 2022, Plaintiff filed an administrative complaint against Defendant with

4    the California Civil Rights Department ("CRD") (formerly, DFEH), and received a right-to-sue

5    letter from the CRD that same day. (Doc. No. 1 at 35–39.)

6        Based on the allegations in her SAC, Plaintiff brings the following three causes of action

7    pursuant to the Fair Employment and Housing Act ("FEHA") against Defendant: (claim 1)

8    retaliation; (claim 2) failure to prevent harassment, discrimination, or retaliation; and (claim 3)

9    harassment. (Doc. No. 14 at 6–9.)

10        On May 17, 2024, Defendant filed the pending motion to dismiss all claims in this action

11    with prejudice. (Doc. No. 15.) Plaintiff filed an opposition to that motion on May 31, 2024. (Doc.

12    No. 17.) Defendant filed a reply thereto on June 10, 2024. (Doc. No. 18.)

13                              **LEGAL STANDARD**

14        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to

15    dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted.

16    *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim may be dismissed for lack of a

17    cognizable legal theory or the absence of sufficient facts to support a cognizable legal theory.

18    *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean*

19    *Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

20        "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

21    accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

22    U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also*

23    Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing

24    that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it

25    contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable

26    for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). For

27    purposes of a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed

28    in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

1   337–38 (9th Cir. 1996). If a court dismisses certain claims, "[l]eave to amend should be granted

2   unless the district court 'determines that the pleading could not possibly be cured by the

3   allegation of other facts.'" *Knappenberger v. City of Phx.*, 566 F.3d 936, 942 (9th Cir. 2009)

4   (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

5                                                    **ANALYSIS**

6          The court will address the sufficiency of Plaintiff's allegations as to each of her claims in

7   turn below.

8   **A.      Retaliation (Claim 1)**

9          Section 12940(h) of FEHA makes it unlawful for an employer to "discharge, expel, or

10  otherwise discriminate against any person because the person has opposed any practices

11  forbidden under this part or because the person has filed a complaint, testified, or assisted in any

12  proceeding under this part." Cal. Gov't Code § 12940(h). Retaliation occurs when a plaintiff

13  engages in protected activity and suffers an adverse employment action as a result. *Cornwell v.*

14  *Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006).

15         The elements of a FEHA retaliation claim are as follows: (i) the plaintiff engaged in a

16  protected activity; (ii) the employer subjected the plaintiff to an adverse employment action; and

17  (iii) a causal link existed between the protected activity and the employer's action. *See Dawson v.*

18  *Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028,

19  1042 (2005) (citing *Iwekaogwu v. City of L.A.*, 75 Cal. App. 4th 803, 814–15 (1999)); *see also*

20  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000) ("Because of the similarity between state

21  and federal employment discrimination laws, California courts look to pertinent federal precedent

22  when applying our own statutes.").

23         1.      <u>Protected Activity</u>

24         "Under FEHA, an employee engaged in a protected activity if their actions opposed any

25  practice or conduct the employee reasonably believed was unlawful and the employer was aware

26  the opposition was based on protesting the perceived unlawful conduct." *Wilson v. City of Fresno*,

27  763 F. Supp. 3d 1073, 1104 (E.D. Cal. 2025) (citing *Yanowitz*, 36 Cal. 4th at 1042); *see also*

28  *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 911 (E.D. Cal. 2017).

                                                       5

1      Defendant argues Plaintiff fails to establish a prima facie case of retaliation under FEHA.[1]

2   (Doc. No. 15 at 5.) Specifically, Defendant argues Plaintiff did not engage in a protected activity

3   because Plaintiff's mother, not Plaintiff, filed the complaint with DSS, and the complaint does not

4   relate to an activity prohibited by FEHA. (*Id.*) Plaintiff responds that in her SAC, she has "listed

5   multiple allegations of retaliation based on protected activities, including the reporting of

6   Defendant's neglect of her children." (Doc. No. 17 at 5.)

7      As an initial matter, Plaintiff alleges she directed her mother to report the incident with

8   her son to DSS, rather than report it herself, because she feared retaliation in her workplace. (Doc.

9   No. 14 at ¶ 20.) As noted above, California courts look to federal precedent under Title VII when

10  applying California's employment statute FEHA, due to the similarities with those laws. *See Guz*,

11  24 Cal. 4th at 354*; Ambat v. City & Cnty. of S.F.*, 757 F.3d 1017, 1023 n. 2 (9th Cir. 2014)

12  (conducting analysis of federal discrimination and FEHA claims according to Title VII case law

13  because "FEHA is interpreted consistently with Title VII").

14      In the Title VII retaliation context, district courts have found that a plaintiff may engage

15  in a protected activity even where that activity is done by another person acting on the plaintiff's

16  behalf. *See, e.g., Palomo v. City of Sanger*, No. 14-cv-01769-TLN-SAB, 2015 WL 5734421, at

17  *7 (E.D. Cal. Sept. 28, 2015) (finding plaintiff engaged in a protected activity for the purposes of

18  a Title VII retaliation claim where plaintiff's husband filed a complaint against defendant on

19  behalf of and for the benefit of plaintiff, and defendant had reason to believe plaintiff assisted in

20  the protected activity). Based on Plaintiff's allegations regarding her supervisor's and coworkers'

21  reactions to the report made to DSS, a reasonable inference can be drawn that Defendant's

22  employees had reason to believe Plaintiff participated in reporting the incident with Plaintiff's son

23  to DSS. (Doc. No. 14 at 4–5.)

24      In addition to indirectly reporting the incident to DSS, Plaintiff has also alleged she

25

26  [1] At the pleading stage, a plaintiff does not need to establish a prima facie case in order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 796 (N.D. Cal. 2015) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S.

27  506, 511 (2002)). Still, courts look to the elements of a prima facie employment discrimination

28  claim to guide the analysis on a motion to dismiss. *Achal*, 114 F. Supp. 3d at 796.

1    engaged in a protected activity by reporting her concerns regarding the incident with her son

2    directly to her supervisor, Deborah Salvino. (*Id.*) An informal complaint to a supervisor may

3    qualify as a protected activity under FEHA where the employee conveyed their concern that the

4    employer is acting unlawfully. *Wilson*, 763 F. Supp. 3d at 1105; *see also Ayala*, 263 F. Supp. 3d

5    at  911 (finding plaintiff engaged in a protected activity where plaintiff filed a number of internal

6    complaints opposing unlawful discrimination); *Yanowitz*, 36 Cal. 4th at 1047 (2005) (explaining

7    that a plaintiff "need not formally file a charge in order to qualify as being engaged in protected

8    opposing activity," but the activity must oppose conduct the "employee reasonably believes

9    constitutes unlawful discrimination" and put the employer "on notice as to what conduct it should

10   investigate."); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th

11   Cir. 2000) (plaintiff's informal complaints to her supervisor constituted a protected activity in the

12   Title VII retaliation context).

13        However, the court is persuaded by Defendant's argument that even if Plaintiff's mother's

14   complaint can be properly attributed to Plaintiff, the contents of the DSS complaint and Plaintiff's

15   direct complaint to her supervisor do not concern an act forbidden by FEHA. (Doc. No. 15 at 6.)

16   FEHA prohibits employment practices that involve discrimination, harassment, and retaliation

17   based on a protected class. *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 106

18   (2008). FEHA makes it unlawful for "an employer, because of the race . . . of any person . . . to

19   discriminate against the person in compensation or in terms, conditions, or privileges of

20   employment." Cal. Gov't Code § 12940(a).

21        Plaintiff conclusively states in her opposition that her belief that "Cadence's employees'

22   discrimination of Plaintiff and her son constituted unlawful employment practices," the subject of

23   her complaint to DSS and her supervisor, was reasonable. (Doc. No. 17 at 7.) However, Plaintiff

24   in her opposition provides no argument nor applicable legal authority in support of her assertion

25   that her belief that the treatment of her son constituted an unlawful employment practice was

26   reasonable. Further, Plaintiff's objection to the treatment of her son objectively did not concern

27   an unlawful employment practice under FEHA. *See Dinslage v. City & Cnty. of S.F.*, 5 Cal. App.

28   5th 368, 372 (2016) (holding that plaintiff's opposition to employer's discriminatory policies and

7

1   practices towards disabled members of the general public was not an opposition to an

2   employment practice and therefore did not constitute a protected activity); *Lozano v. Neovia*

3   *Logistics Distrib., LP*, No. 20-cv-1683-JFW-SHK, 2021 WL 4313869, at \*8 (C.D. Cal. Aug. 4,

4   2021) (internal quotation marks omitted) ("The reasonableness of the employee's belief that he

5   was opposing a practice prohibited by FEHA has both a subjective and an objective

6   component.").

7          Therefore, the court finds that the Plaintiff has not sufficiently pled she engaged in a

8   protected activity for the purposes of stating a claim for retaliation under FEHA.

9          2.    Adverse Employment Action

10         To plead a claim for retaliation under FEHA, Plaintiff must also allege she was subjected

11  to an adverse employment action. *Yanowitz*, 36 Cal. 4th at 1042. Under California law, an adverse

12  employment action occurs when action is taken that "materially affect[s] the terms, conditions, or

13  privileges of employment." *Flores v. City of Westminster*, 873 F.3d 739, 748 (9th Cir. 2017)

14  (quoting *Yanowitz*, 36 Cal. 4th at 1052). Such actions include, but are not limited to, termination

15  and demotion. *Yanowitz*, 36 Cal 4th at 1054. "If proven, constructive discharge is legally

16  equivalent to a termination, and therefore can constitute an adverse employment decision . . . ."

17  *Grimes v. W. Grp. Co.*, 26 F. App'x 641, 643 (9th Cir. 2001).[2]

18         "Constructive discharge occurs when the employer's conduct effectively forces an

19  employee to resign." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1244 (1994). To allege a

20  constructive discharge has occurred, a plaintiff must plead "that the employer either intentionally

21  created or knowingly permitted working conditions that were so intolerable or aggravated at the

22  time of the employee's resignation that a reasonable employer would realize that a reasonable

23  person in the employee's position would be compelled to resign." *Id.* at 1251. For an employment

24  situation to be deemed intolerable, "adverse working conditions must be unusually aggravated or

25  amount to a continuous pattern." *Id.* at 1247 Courts consider "whether the resignation was

26  coerced," rather than "one rational option for the employee." *Id.* at 1246. Indeed, a claim for

27  _____

28  [2] Citation to the unpublished Ninth Circuit opinions such as those cited here and elsewhere in this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1  constructive discharge must be based on more than a "single, trivial, or isolated acts of

2  misconduct." *Id.* at 1247.

3       In its motion, Defendant argues Plaintiff fails to allege she experienced an "adverse

4  employment action which materially affected the terms and conditions of her employment," as

5  required for a FEHA retaliation claim. (*Id.* at 6.) Plaintiff responds that she alleges in her SAC

6  she was constructively discharged, which is an adverse employment action. (Doc. No. 17. at 7.)

7  Plaintiff argues she has sufficiently alleged that Defendant created hostile working conditions

8  based on her allegations that her children were neglected, that her coworkers were instructed by

9  management to ignore her, and that any reasonable employee in those circumstances would

10 resign. (*Id.*) Specifically, Plaintiff alleges in her SAC that the intolerable working conditions that

11 led her to resign her position included her coworkers no longer inviting her to social events at and

12 after work, her children being "neglected" at the daycare, and her supervisor's instruction to other

13 employees not to associate with Plaintiff. (Doc. No. 14 at 4.) Although not entirely clear from the

14 SAC, these events appear to have occurred during less than a one-month period in October 2019.

15 (*Id.* at 5–6.)

16      Besides pointing to these allegations, however, Plaintiff does not cite to any decisions in

17 which courts have found comparable allegations sufficient to plead constructive discharge. The

18 court does not find the employment conditions as Plaintiff describes them in her SAC, which

19 occurred over a brief period, to rise to the level of intolerable such that her resignation would be

20 deemed coerced. *See Crowe v. Evergood Assocs., LLC*, No. 05-cv-01627-FCD-EFB, 2007 WL

21 869964, at *6 (E.D. Cal. Mar. 21, 2007) ("Plaintiff's vague statement that he was laughed at by

22 his fellow employees is insufficient evidence for the court to find his work environment was so

23 extraordinary and egregious that a reasonable person would have had no alternative but to leave

24 [his employment]."). Nor do Plaintiff's allegations provide an adequate basis from which the

25 court could infer that "a reasonable employer would realize that a reasonable person in

26 [Plaintiff's] position would be compelled to resign." *See Turner*, 7 Cal. 4th at 1251. For example,

27 Plaintiff does not describe how not being invited to social events impacted her ability to perform

28 and complete her work duties. Plaintiff describes a general breakdown in trust, arguing that

9

1    "Plaintiff was ostracized from her co-workers to the point where it became impossible to work

2    because Plaintiff's coworkers did not trust her." (Doc. No. 17 at 8.) However, Plaintiff does not

3    proffer any specific facts about how this alleged breakdown in trust affected her ability to carry

4    out her job duties during the approximately three-week period described in the SAC. (Doc. No.

5    17 at 8.) Having considered the parties' arguments and the allegations in the SAC, the court finds

6    Plaintiff has not sufficiently pled she was constructively discharged. As a result, Plaintiff has not

7    sufficiently alleged facts to support the requisite second element for her FEHA retaliation claim.

8         Because Defendant's motion to dismiss Plaintiff's FEHA retaliation claim will be granted

9    on the basis of the first two elements, the court need not address the parties' arguments with

10   regard to the third requisite element of causation. For these reasons, Defendant's motion to

11   dismiss Plaintiff's first claim for retaliation in violation of FEHA is granted. In light of the

12   circumstances of the incident described in Plaintiff's allegations, the court doubts that Plaintiff

13   could plausibly state a claim for retaliation under FEHA. However, because it is possible that

14   Plaintiff may be able to allege other relevant facts in a further amended complaint, the court will

15   dismiss Plaintiff's FEHA retaliation claim with leave to amend out of an abundance of caution.

16   **B.      Harassment - Hostile Work Environment (Claim 3)**

17        The elements of a FEHA harassment claim are as follows: (1) the plaintiff is a member of

18   a protected class, (2) the plaintiff was subjected to harassment because of that membership, and

19   (3) "the harassment was so severe that it created a hostile work environment." *Golden v.*

20   *Microsoft Corp.*, 727 F. Supp. 3d 867, 872 (N.D. Cal. 2024) (citing *Lawler v. Montblanc N. Am.,*

21   *LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013)). To create a hostile work environment, the racially

22   objectionable conduct must be "objectively and subjectively offensive." *Hughes*, 46 Cal. 4th

23   1043, 1044 (2009).

24        Defendant argues that Plaintiff does not allege in her SAC "that Cadence committed a

25   single act of harassing conduct against her because of her race." (Doc. No. 15 at 7.) Defendant

26   contends that at most, Plaintiff alleges two incidents of harassing conduct—that her son was made

27   to dance to a rap song on video and that she was ostracized by coworkers—neither of which are

28   "severe []or pervasive." (*Id.* at 8.) Plaintiff argues in opposition that the illegal harassment and

1    discrimination she experienced was "due to the fact that she was an African-American employee

2    who was mother of an African-American infant enrolled [at] Cadence." (Doc. No. 17 at 8.)

3    Plaintiff argues her son was specifically targeted by co-workers because of Plaintiff's and her

4    son's race. (*Id.*). Plaintiff further avers that "it is not realistic to ignore the fact that Plaintiff's

5    children are enrolled in her workplace" and that actions towards her children would "obviously

6    and reasonably materially affect her ability to perform her job." (*Id.*)

7          First, the parties do not dispute that Plaintiff has sufficiently alleged she is a member of a

8    protected class as an African-American woman. (Doc. Nos. 14, 15 at 7.)

9           Second, the parties do however dispute whether Plaintiff has sufficiently alleged that she

10   was subjected to harassment because of her race. In the harassment context, the analysis "focuses

11   on situations in which the social environment of the workplace becomes intolerable because the

12   harassment (whether verbal, physical, or visual) communicates an offensive message to the

13   harassed employee." *Roby v. McKesson Corp.,* 47 Cal. 4th 686, 706 (2009) (quoting Cal. Gov't

14   Code § 12940(a)). Though Plaintiff alleges that her coworkers chose to record a video of her

15   infant son dancing to rap music because of his race, Plaintiff does not allege that her ostracization

16   in the workplace, the neglect of her children, or her supervisor directing coworkers to avoid her

17   was racially motivated. Plaintiff does not identify in her SAC any verbal, physical, or visual race-

18   based harassment by her supervisors or coworkers, Plaintiff does not allege that her coworkers or

19   supervisors made any racially-offensive statements, nor does she indicate the frequency of any

20   racially-motivated conduct or statements. Plaintiff also characterizes the behavior of her employer

21   in conclusory fashion as "unwelcome, pervasive, and severe," (Doc. No. 14 at ¶ 70), but she does

22   not explain the frequency or describe the severity of the conduct. In short, Plaintiff has not

23   proffered any facts to support that she herself was harassed by her coworkers because of her race.

24   *Cf. Wilson v. City of Fresno*, 763 F. Supp. 3d 1073, 1102 (E.D. Cal. 2025) (denying defendant's

25   motion for summary judgment where Plaintiff offered evidence that she was called an "egregious

26   racial slur" and was accused of playing the "race card" to get her employment position).

27          As currently pled, the court finds Plaintiff has not stated a cognizable claim for race-

28   based harassment under FEHA. *See Lyle v. Warner Bros. Television Prods.,* 38 Cal. 4th 264, 283

                                          11

1    (2006) ("With respect to the pervasiveness of harassment, courts have held an employee generally

2    cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the

3    employee must show a concerted pattern of harassment of a repeated, routine, or a generalized

4    nature."); *Lelaind v. City & Cnty. of S.F.*, 576 F. Supp. 2d 1079, 1102 (N.D. Cal. 2008) ("None of

5    the actionable conduct involves the type of actions typical of hostile work environment claims,

6    for example, racial slurs, sexist remarks, racially or sexually derogatory acts, physical threats,

7    touching, or violence."). The court will therefore grant Defendant's motion to dismiss plaintiff's

8    FEHA harassment claim.

9          As mentioned in the court's discussion of Plaintiff's retaliation claim, the court is

10   skeptical that in light of the alleged circumstances that Plaintiff could plausibly state a claim for

11   harassment on the basis of race. Out of an abundance of caution, however, the court will dismiss

12   Plaintiff's third claim for harassment with leave to amend.

13   **C.      Failure to Prevent Harassment, Discrimination, or Retaliation (Claim 2)**

14         Under FEHA, it is unlawful for an employer "to fail to take all reasonable steps necessary

15   to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). The

16   elements of a failure to prevent harassment claim are that (1) plaintiff was subjected

17   to discrimination, harassment, or retaliation; (2) the employer failed to take reasonable steps

18   to prevent discrimination, harassment, or retaliation; and (3) the employer's failure caused

19   plaintiff to suffer injury, damage, loss, or harm. *Caldera v. Dep't of Corrs. & Rehab.*, 25 Cal.

20   App. 5th 31, 43–44 (2018).

21         Though California courts have held the failure to prevent harassment, discrimination, or

22   retaliation claim is a distinct unlawful employment practice, employers may only be liable for

23   failing to prevent discrimination where discriminatory actions took place. *Dep't of Fair Emp. &*

24   *Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 748 (9th Cir. 2011) (citations omitted). Indeed, "a

25   failure to prevent discrimination claim is essentially derivative of a discrimination claim." *Moss v.*

26   *City & Cnty. of S.F.*, 714 F. Supp. 3d 1167, 1185 (N.D. Cal. 2024) (quoting *Achal,* 114 F. Supp.

27   3d at 804).

28         Here, because Plaintiff fails to sufficiently state a claim for retaliation and harassment, her

1  derivative claim for failure to prevent harassment, discrimination, or retaliation is also

2  insufficiently pled. *See Hightower v. S. Cal. Permanente Med. Grp.*, No. 5:22-cv-00181-JWH-

3  KK, 2022 WL 17080372, at *5 (C.D. Cal. July 20, 2022) (dismissing plaintiff's claim for failure

4  to prevent harassment, discrimination, and retaliation in violation of FEHA where plaintiff did not

5  sufficiently state a claim for discrimination or harassment)*; see also Lattimore v. Euramax Int'l,*

6  *Inc.*, 771 F. App'x 433, 434 (9th Cir. 2019) (finding district court did not err by granting

7  summary judgment on plaintiff's derivative failure to prevent discrimination and retaliation claim

8  because the underlying claims also failed). Therefore, Defendant's motion to dismiss Plaintiff's

9  second claim for harassment, discrimination, or retaliation is likewise granted, with leave to

10  amend.

11                                   **CONCLUSION**

12       For the reasons explained above:

13       1.      Defendant's motion to dismiss (Doc. No. 15) is GRANTED, with leave to amend;

14       2.      Within twenty-one (21) days of the date of entry of this order, Plaintiff shall file a

15               third amended complaint; and

16       3.      Plaintiff is warned that her failure to comply with this order may result in

17               dismissal of this action due to Plaintiff's failure to prosecute and failure to state a

18               cognizable claim.

19

20       IT IS SO ORDERED.

21  Dated:    **June 9, 2025**                    _____

22                                                Dena Coggins
                                                  United States District Judge
23

24

25

26

27

28

                                         13