.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JASMINE DAVIS,

Plaintiff,

v.

CADENCE EDUCATION, LLC,

Defendant.

No. 2:23-cv-02975-DC-CKD

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

(Doc. No. 22)

On March 6, 2026, this matter came before the court on Defendant Cadence Education, LLC's motion to dismiss Plaintiff Jasmine Davis's third amended complaint. (Doc. No. 22.) For the reasons explained below, the court will grant Defendant's motion to dismiss.

**BACKGROUND**

Plaintiff Jasmine Davis filed this action in the Sacramento County Superior Court against Defendant, her former employer, and Does 1–20 on October 17, 2023. (Doc. No. 1 at 17.) On December 20, 2023, Defendant removed this action to this court. (Doc. No. 1.) Plaintiff filed a first amended complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15. (Doc. No. 8.) Defendant filed a motion to dismiss on March 1, 2024, which the court summarily granted with leave to amend on April 15, 2024. (Doc. Nos. 9, 13.)

Plaintiff subsequently filed a second amended complaint ("SAC") on May 3, 2024. (Doc. No. 14.) Defendant filed a motion to dismiss the SAC on May 17, 2024. (Doc. No. 15.) On June

10, 2025, this court granted Defendant's motion to dismiss with leave to amend and directed Plaintiff to file a third amended complaint. (Doc. No. 20.) On June 30, 2025, Plaintiff filed the operative third amended complaint ("TAC"). (Doc. No. 21.) Plaintiff alleges the following in the TAC.

In December 2017, Plaintiff, an African-American woman, started working at Cadence Academy as a pre-school teacher. (*Id.* at ¶¶ 15, 86.) Plaintiff's older child began attending Cadence Academy shortly after Plaintiff started working there. (*Id.* at ¶ 16.) Plaintiff's younger child, a son, began attending Cadence Academy in October 2018. (*Id.*)

In October 2019, Katie Salvino, another Cadence Academy employee and daughter of the Cadence Academy director Deborah Salvino, recorded a video of herself holding Plaintiff's then thirteen-month-old son and "manipulat[ing] the baby's body to dance to a rap song." (*Id.* at ¶ 17.) The video showed Plaintiff's son "being jerked around and lifted to dance." (*Id.*) Another Cadence Academy employee, Ashley Charity, posted the video of Plaintiff's son and Katie Salvino on Facebook and sent the video to Plaintiff. (*Id.*)

According to Plaintiff, Katie Salvino and Ashley Charity "have cared for many children of all races during their employment with Cadence," and Plaintiff is not aware of them ever "forc[ing] any other infants to dance and then tak[ing] videos of them, except for [Plaintiff's son], who is African-American." (*Id.* at ¶¶ 18, 20.) Plaintiff believed the mistreatment of her son would not have occurred to children of non-employees or the "non-African American children of any employees." (*Id.* at ¶ 19.) Plaintiff believed it was illegal for staff at Cadence Academy to mistreat her son. (*Id.* at ¶ 21.) The video recording was taken during work hours, and the employees responsible were never disciplined by their employer for their actions. (*Id.*)

Plaintiff subsequently directed her mother, Rhonda Davis, to report the Cadence Academy employees' actions to the California Department of Social Services ("DSS"). (*Id.* at ¶ 22.) Plaintiff was concerned about retaliation if she reported the incident herself. (*Id.*) DSS contacted Defendant regarding the incident and interviewed multiple employees. (*Id.* at ¶ 23.) Defendant and its employees were informed that Plaintiff's mother was the one who filed a complaint with DSS. (*Id.*) Defendant was eventually cited for a "violation of personal rights of a child." (*Id.* at ¶

24.)

Plaintiff noticed that after her mother reported the incident to DSS, "many of her coworkers and supervisors began to treat her differently," and that she was ostracized at work. (*Id.* at ¶ 25.) Plaintiff was also "routinely ignored at work, including co-workers and supervisors failing to respond[] when [Plaintiff] requested assistance, guidance, or instruction on her work assignments." (*Id.* at ¶ 26.) The actions of Plaintiff's colleagues "made it impossible for her to complete some of her work tasks properly." (*Id.* at ¶ 27.) Plaintiff's children were also neglected and treated differently. (*Id.* at ¶ 28.) On multiple occasions when Plaintiff picked her children up from Cadence Academy, she found their diapers had not been changed. (*Id.*)

Plaintiff reported the actions of her co-workers to her supervisor, director Deborah Salvino, but the "ostracization" of Plaintiff and neglect of her children continued. (*Id.* at ¶ 29.) One of Plaintiff's coworkers, identified as Danielle, informed her that "everyone was mad at Plaintiff for her mother's reporting of the school's actions regarding her son." (*Id.* at ¶ 30.) Danielle also informed Plaintiff that Deborah Salvino "told all the employees not to speak to Plaintiff because they could not trust her." (*Id.* at ¶ 31.) Plaintiff believed Danielle because when Deborah Salvino was upset with other employees, she advised Plaintiff not to speak with them. (*Id.* at ¶ 32.)

On October 17, 2019, Plaintiff discussed the harassment and retaliation she experienced with Deborah Salvino. (*Id.* at ¶ 33.) Plaintiff told her the "exploitation" of her son in a racial manner by Katie Salvino and subsequent lack of discipline was unacceptable. (*Id.* ¶¶ 33, 34.) Plaintiff also told Deborah Salvino that this caused "a significant amount of stress and emotional pain because it was obvious to Plaintiff that they did not care about the mistreatment of Plaintiff's son in a classroom where he should have been safe." (*Id.* at ¶ 33.) Deborah Salvino denied that Plaintiff was retaliated against or harassed and did not offer to protect Plaintiff or her children. (*Id.* at ¶ 34.) Also on October 17, 2019, Deborah Salvino told employees that Plaintiff was "throwing them under the bus." (*Id.* at ¶ 37.) Plaintiff believes that Katie Salvino "would not have committed her discriminatory actions against [Plaintiff's son] if he were not African-American, as rap music is primarily performed by African-American artists." (*Id.* at ¶ 36.)

On October 23, 2019, Plaintiff received a letter from Selena Delgado, a former coworker at Cadence Academy. (*Id.* at ¶ 39.) Deborah Salvino received this same letter. (*Id.* at ¶ 40.) The letter explained that Ms. Delgado herself was subjected to "stereotypical and racist comments" from Deborah and Katie Salvino.[1] (*Id.* at ¶ 39.)

Also on October 23, 2019, a coworker told Plaintiff that her children's teachers at Cadence Academy said "they did not want to do anything regarding [Plaintiff's] children because they did not want to deal with Plaintiff or get reported by her." (*Id.* at ¶ 42.) That same day, Plaintiff submitted a resignation letter to Deborah Salvino, reminding her of the issues discussed in their October 17, 2019 meeting and explaining why she was quitting. (*Id.* at ¶ 44.) Deborah Salvino's actions after the meeting, "combined with the intentional neglect of her two children" rendered Plaintiff unable to continue working in such an environment because of her anxiety, causing her to be "constructively terminated." (*Id.* at ¶ 43.) Plaintiff later forwarded that letter to Defendant's corporate office. (*Id.* at ¶ 44.) On October 16, 2022, Plaintiff filed an administrative complaint against Defendant with the California Civil Rights Department ("CRD") (formerly, the Department of Fair Employment and Housing) and received a right-to-sue letter from the CRD that same day. (Doc. No. 1 at 35–39.) Based on the allegations in her TAC, Plaintiff brings the following three causes of action pursuant to the Fair Employment and Housing Act ("FEHA") against Defendant: retaliation (claim 1); failure to prevent harassment, discrimination, or retaliation (claim 2); and harassment (claim 3). (Doc. No. 21 at 7–12.)

On August 4, 2025, Defendant filed the pending motion to dismiss all claims in this action with prejudice. (Doc. No. 22.) Plaintiff filed an opposition to that motion on August 18, 2025. (Doc. No. 24.) Defendant filed a reply thereto on August 28, 2025. (Doc. No. 27.)

/////

---

[1] Plaintiff alleges in her TAC that the letter explained that Ms. Delgado was "aware of the racial targeting by Cadence employees towards Plaintiff and her family." (Doc. No. 21 at ¶ 39.) However, the letter attributed to Ms. Delgado and attached to the complaint does not contain reference to any alleged racial discrimination against Plaintiff, nor does it mention Plaintiff at all. Rather, it includes information regarding "stereotypical and racist comments" from Deborah and Katie Salvino regarding Ms. Delgado's "Mexican background," and various complaints regarding the unprofessional work environment at Cadence Academy. (Doc. No. 21 at 25–26.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim may be dismissed for lack of a cognizable legal theory or the absence of sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). For purposes of a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). If a court dismisses certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phx.*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

## ANALYSIS

The court will address the sufficiency of Plaintiff's allegations as to each of her claims in turn below.

### A. Retaliation (Claim 1)

Section 12940(h) of FEHA makes it unlawful for an employer to "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." Cal. Gov't Code § 12940(h). Retaliation occurs when a plaintiff

engages in protected activity and suffers an adverse employment action as a result. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006).

The elements of a FEHA retaliation claim are as follows: (i) the plaintiff engaged in a protected activity; (ii) the employer subjected the plaintiff to an adverse employment action; and (iii) a causal link existed between the protected activity and the employer's action.[2] *See Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (citing *Iwekaogwu v. City of L.A.*, 75 Cal. App. 4th 803, 814–15 (1999)); *see also Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes.").

1. <u>Protected Activity</u>

"Under FEHA, an employee engaged in a protected activity if their actions opposed any practice or conduct the employee reasonably believed was unlawful and the employer was aware the opposition was based on protesting the perceived unlawful conduct." *Wilson v. City of Fresno*, 763 F. Supp. 3d 1073, 1104 (E.D. Cal. 2025) (citing *Yanowitz*, 36 Cal. 4th at 1042); *see also Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 911 (E.D. Cal. 2017).

Defendant argues Plaintiff fails to allege facts sufficient to state a claim for retaliation in her TAC. (Doc. No. 22 at 7.) Specifically, Defendant argues Plaintiff did not engage in a protected activity because Plaintiff's mother, not Plaintiff, filed the complaint with DSS, and the complaint does not relate to an activity prohibited by FEHA because it concerned Plaintiff's son. (*Id.* at 22.) Plaintiff responds that in her TAC, she has "listed multiple allegations of retaliation based on protected activities, including Plaintiff's mother's reporting of Defendant's exploitation and neglect of Plaintiff's infant child." (Doc. No. 24 at 6.)

As an initial matter, Plaintiff alleges she directed her mother to report the incident with

---

[2] At the pleading stage, a plaintiff does not need to establish a prima facie case in order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 796 (N.D. Cal. 2015) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). Still, courts look to the elements of a prima facie employment discrimination claim to guide the analysis on a motion to dismiss. *Achal*, 114 F. Supp. 3d at 796.

her son to DSS, rather than report it herself, because she feared retaliation in her workplace. (Doc. No. 14 at ¶ 22.) As noted above, California courts look to federal precedent under Title VII when applying FEHA, due to the similarities between those statutes. *See Guz*, 24 Cal. 4th at 354*; Ambat v. City & Cnty. of S.F.*, 757 F.3d 1017, 1023 n. 2 (9th Cir. 2014) (conducting analysis of federal discrimination and FEHA claims according to Title VII case law because "FEHA is interpreted consistently with Title VII").

In the Title VII retaliation context, district courts have found that a plaintiff may engage in a protected activity even where that activity is done by another person acting on the plaintiff's behalf. *See, e.g., Palomo v. City of Sanger*, No. 14-cv-01769-TLN-SAB, 2015 WL 5734421, at *7 (E.D. Cal. Sept. 28, 2015) (finding plaintiff engaged in a protected activity for the purposes of a Title VII retaliation claim where plaintiff's husband filed a complaint against defendant on behalf of and for the benefit of plaintiff, and defendant had reason to believe plaintiff assisted in the protected activity). Based on Plaintiff's allegations regarding her supervisor's and coworkers' reactions to the report made to DSS, a reasonable inference can be drawn that Defendant's employees had reason to believe Plaintiff participated in reporting the incident with Plaintiff's son to DSS. (Doc. No. 14 at ¶¶ 22–31.)

Plaintiff also alleged she engaged in a protected activity by reporting her concerns regarding the incident with her son directly to her supervisor, Deborah Salvino, though at the hearing, Plaintiff focused on her mother's report to DSS as the protected activity. (*Id.*) Nonetheless, an informal complaint to a supervisor may qualify as a protected activity under FEHA where the employee conveyed their concern that the employer is acting unlawfully. *Wilson*, 763 F. Supp. 3d at 1105; *see also Ayala*, 263 F. Supp. 3d at 911 (finding plaintiff engaged in a protected activity where plaintiff filed a number of internal complaints opposing unlawful discrimination); *Yanowitz*, 36 Cal. 4th at 1047 (2005) (explaining that a plaintiff "need not formally file a charge in order to qualify as being engaged in protected opposing activity," but the activity must oppose conduct the "employee reasonably believes constitutes unlawful discrimination" and put the employer "on notice as to what conduct it should investigate."); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000)

(plaintiff's informal complaints to her supervisor constituted a protected activity in the Title VII retaliation context).

However, the court is once again persuaded by Defendant's argument that the content of Plaintiff's mother's DSS complaint and Plaintiff's direct complaint to her supervisor do not concern an activity prohibited by FEHA. (Doc. No. 15 at 6.) FEHA makes it unlawful for "an employer, because of the race . . . of any person . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a).

Plaintiff argues in her opposition that Plaintiff's son's "exploitation due to Plaintiff's race is an act forbidden by the FEHA, which forbids racial harassment." (Doc. No. 24 at 6.) While Plaintiff is correct that FEHA prohibits harassment based on race, Plaintiff's complaint ultimately concerns alleged racial harassment of Plaintiff's son, rather than Plaintiff herself. Importantly, Plaintiff does not allege that she herself was harassed or discriminated against based on race. Rather, Plaintiff seeks to impute the racial harassment of her son to herself. (*Id.* at 6–7.) At the hearing on Defendant's motion to dismiss, Plaintiff conceded that this theory of liability requires a logical "leap."

Further, Plaintiff in her opposition provides no argument nor applicable legal authority in support of her assertion that her belief that the treatment of her son constituted an unlawful employment practice was reasonable. Plaintiff's objection to the treatment of her son also objectively did not concern an unlawful employment practice under FEHA. *See Dinslage v. City & Cnty. of S.F.*, 5 Cal. App. 5th 368, 372 (2016) (holding that plaintiff's opposition to employer's discriminatory policies and practices towards disabled members of the general public was not an opposition to an employment practice and therefore did not constitute a protected activity); *Lozano v. Neovia Logistics Distrib., LP*, No. 20-cv-1683-JFW-SHK, 2021 WL 4313869, at *8 (C.D. Cal. Aug. 4, 2021) ("The reasonableness of the employee's belief that he was opposing a practice prohibited by FEHA has both a subjective and an objective component.") (internal citation and quotation marks omitted).

Therefore, the court finds that the Plaintiff has not sufficiently pled she engaged in a protected activity for the purpose of stating a claim for retaliation under FEHA.

Because Defendant's motion to dismiss Plaintiff's FEHA retaliation claim will be granted on the basis of the first element, the court need not address the parties' arguments regarding the second and third elements. Accordingly, Defendant's motion to dismiss Plaintiff's first claim for retaliation in violation of FEHA will be granted.

**B. Harassment — Hostile Work Environment (Claim 3)**

The elements of a FEHA harassment claim are as follows: (1) the plaintiff is a member of a protected class, (2) the plaintiff was subjected to harassment because of that membership, and (3) "the harassment was so severe that it created a hostile work environment." *Golden v. Microsoft Corp.*, 727 F. Supp. 3d 867, 872 (N.D. Cal. 2024) (citing *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013)). To create a hostile work environment, the racially objectionable conduct must be "objectively and subjectively offensive." *Hughes*, 46 Cal. 4th 1043, 1044 (2009).

Defendant argues that Plaintiff does not allege in her SAC "that [Defendant] committed a single act of harassing conduct against her because of her race." (Doc. No. 22 at 7.) Defendant contends that at most, Plaintiff alleges two incidents of harassing conduct—that her son was made to dance to a rap song on video and that she was ostracized by coworkers—neither of which are "severe []or pervasive." (*Id.* at 8.) Plaintiff argues in opposition that "race was a factor in why she was harassed by Defendant," and points to her allegations regarding the incident with her son in support of that statement. (Doc. Nos. 24 at 9; 21 at ¶¶ 17–20.)

The parties disagree as to whether Plaintiff has sufficiently alleged that she was subjected to harassment because of her race. In the harassment context, the analysis "focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Roby v. McKesson Corp.,* 47 Cal. 4th 686, 706 (2009) (quoting Cal. Gov't Code § 12940(a)). Though Plaintiff alleges that her coworkers chose to record a video of her infant son dancing to rap music because of his race, Plaintiff does not allege that her ostracization in the workplace, the neglect of her children, or her supervisor directing coworkers to avoid her was racially motivated as to Plaintiff. Indeed, Plaintiff alleges she believed Deborah Salvino had told

other employees to not speak to Plaintiff because "Deborah Salvino had previously told Plaintiff not to speak to certain co-workers when she was upset with them." (*Id.* at ¶¶ 31, 32.) Plaintiff does not specifically identify in her TAC any verbal, physical, or visual race-based harassment by her supervisors or coworkers despite alleging that such harassment occurred. (Doc. No. 21 at ¶ 85.)

Further, Plaintiff does not allege that her coworkers or supervisors made any racially-offensive statements, nor does she indicate the frequency of any racially-motivated conduct or statements. Plaintiff instead points to the letter from Ms. Delgado, dated the same day that Plaintiff resigned, which states that Deborah and Kate Salvino made "stereotypical and racist comments" about Ms. Delgado's "Mexican background." (*Id.* at ¶ 21.) Though knowledge of harassment of others may be relevant to show a hostile work environment, *Beyda v. City of Los Angeles*, 65 Cal. App. 4th 511, 521 (1998), that Plaintiff may have known of the harassment of others is insufficient to plead a hostile work environment absent specific allegations that Plaintiff herself was harassed based on her race.

Plaintiff also characterizes the behavior of her employer in conclusory fashion as "unwelcome, pervasive, and severe," (Doc. No. 21 at ¶ 85), but she does not explain the frequency or describe the severity of the conduct. Indeed, according to Plaintiff, the events underlying her complaint occurred over just a two-week period. In short, Plaintiff has not proffered sufficient facts that she herself was harassed by her coworkers because of her race. *See Lelaind v. City & Cnty. of S.F.*, 576 F. Supp. 2d 1079, 1102 (N.D. Cal. 2008) ("None of the actionable conduct involves the type of actions typical of hostile work environment claims, for example, racial slurs, sexist remarks, racially or sexually derogatory acts, physical threats, touching, or violence.").

The court finds Plaintiff has not stated a cognizable claim for race-based harassment under FEHA. *See Lyle v. Warner Bros. Television Prods.,* 38 Cal. 4th 264, 283 (2006) ("With respect to the pervasiveness of harassment, courts have held an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature.") The court will

therefore grant Defendant's motion to dismiss plaintiff's FEHA harassment claim.

**C. Failure to Prevent Harassment, Discrimination, or Retaliation (Claim 2)**

Under FEHA, it is unlawful for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). The elements of a failure to prevent harassment claim are that (1) plaintiff was subjected to discrimination, harassment, or retaliation; (2) the employer failed to take reasonable steps to prevent discrimination, harassment, or retaliation; and (3) the employer's failure caused plaintiff to suffer injury, damage, loss, or harm. *Caldera v. Dep't of Corrs. & Rehab.*, 25 Cal. App. 5th 31, 43–44 (2018).

Though California courts have held the failure to prevent harassment, discrimination, or retaliation claim is a distinct unlawful employment practice, employers may only be liable for failing to prevent discrimination where discriminatory actions took place. *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 748 (9th Cir. 2011) (citations omitted). Indeed, "a failure to prevent discrimination claim is essentially derivative of a discrimination claim." *Moss v. City & Cnty. of S.F.*, 714 F. Supp. 3d 1167, 1185 (N.D. Cal. 2024) (quoting *Achal,* 114 F. Supp. 3d at 804).

Here, because Plaintiff has again failed to sufficiently state a claim for retaliation and harassment in her TAC, her derivative claim for failure to prevent harassment, discrimination, or retaliation is also insufficiently pled. *See Hightower v. S. Cal. Permanente Med. Grp.*, No. 5:22-cv-00181-JWH-KK, 2022 WL 17080372, at *5 (C.D. Cal. July 20, 2022) (dismissing plaintiff's claim for failure to prevent harassment, discrimination, and retaliation in violation of FEHA where plaintiff did not sufficiently state a claim for discrimination or harassment). Therefore, Defendant's motion to dismiss Plaintiff's second claim for failure to prevent harassment, discrimination, or retaliation will also be granted.

Though the court remains troubled by the allegations in the complaint against Defendant and its employees, Plaintiff has failed to state a claim upon which relief may be granted for the third time and accordingly, the court will dismiss this case with prejudice. This dismissal, based on pleading deficiencies, should not be construed as condoning the alleged conduct described in

the TAC.

## CONCLUSION

For the reasons explained above:

1. Defendant's motion to dismiss (Doc. No. 22) is GRANTED, without leave to amend;
2. This case is dismissed with prejudice; and
3. The Clerk of the Court is directed to enter judgment in favor of Defendant and close this case.

IT IS SO ORDERED.

Dated: **September 29, 2026**

Dena Coggins
United States District Judge